## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **RENDA SAMUELS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.:  2:15-CV-01374-MHH** |
| | ) | |
| **CITY OF BIRMINGHAM, a** | ) | |
| **Municipal Corporation, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Renda Samuels works for the City of Birmingham's Traffic and Engineering Department.  According to Ms. Samuels, the City and her supervisors discriminated against her because she is a female, and they retaliated against her after she objected to and reported acts of discrimination.[1]  Ms. Samuels asserts Title VII claims against the City and § 1983 claims against the City and her supervisors, Kelvin Blevins, Will Goodman, and Thomas Stinson.[2, 3]

---

[1] Ms. Samuels is African-American.  Initially, Ms. Samuels asserted a race discrimination claim against the defendants.  The Court previously dismissed Ms. Samuels's Title VII race discrimination claim.  (Doc. 21).

[2] The Court refers to the City, Mr. Blevins, Mr. Goodman, and Mr. Stinson collectively as "the defendants."

[3] Ms. Samuels also asserted state law claims for outrage and negligent hiring, training, and supervision against Mr. Blevins, Mr. Goodman, and Mr. Stinson.  (Doc. 9, ¶¶ 77-82).  In her

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the defendants ask the Court to enter judgment in their favor on all of Ms. Samuels's claims against them. (Doc. 22). The defendants also ask this Court to strike all or part of five affidavits Ms. Samuels submitted in response to their motion for summary judgment. (Doc. 32). For the reasons explained below, the Court denies the defendants' motion to strike, and the Court grants in part and denies in part the defendants' motion for summary judgment.

## I.    SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). To demonstrate that there is a genuine dispute as to a material fact that precludes summary judgment, a party opposing a motion for summary judgment must cite "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1)(A). "The court need consider only the cited materials, but it may

---

response to the defendants' motion for summary judgment, Ms. Samuels conceded that she did not establish her state law claims for outrage and negligent hiring, training, and supervision. (Doc. 29, p. 26). Therefore, the Court grants the defendants' motion for summary judgment on those claims. Ms. Samuels also conceded that the City cannot be liable for punitive damages, and the Court grants the defendants' motion as to Ms. Samuels's claims for punitive damages against the City. (Doc. 29, p. 35); *see also* Ala. Code (1975) § 6-11-26 ("Punitive damages may not be awarded against the State of Alabama or any county or municipality thereof . . . .").

consider other materials in the record." Fed. R. Civ. P. 56(c)(3). When considering a summary judgment motion, the Court must view the evidence in the record in the light most favorable to the non-moving party and draw reasonable inferences in favor of the non-moving party. *White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188, 1191 (11th Cir. 2015).

## II.     FACTUAL BACKROUND

### A.     Ms. Samuels's Employment History with the City

Ms. Samuels began working for the City of Birmingham in 1994 in the Department of Public Works. (Doc. 28-1, p. 16). In 1996 or 1997, she transferred to the City's Traffic and Engineering Department and worked as a parking enforcement officer for six months before becoming a laborer in the traffic department. (*Id.*, pp. 17-18).

After her transfer, Ms. Samuels applied for several open positions in the traffic department, including a position as a traffic signal worker. (Doc. 28-1, p. 21). The City did not interview Ms. Samuels for any of the open positions even though her name appeared in certification lists of qualified applicants. (Doc. 28-1, p. 21-22, 24).[4]     Consequently, Ms. Samuels filed a gender discrimination charge with the Equal Employment Opportunity Commission ("EEOC") in 2008 or 2009.

_____

[4] The Jefferson County Personnel Board certifies which applicants are qualified for an open position and places the names of those qualified applicants on a certification list of potential candidates for the position. (Doc. 25, ¶ 15; Doc. 29, p. 6; Doc. 28-29, pp. 18-19).

(*See id.*, p. 22).  After Ms. Samuels filed her EEOC charge, the City promoted her. She became a traffic signal worker, effective January 16, 2009, and she has worked as a traffic signal worker since that time.  (Doc. 28-1, pp. 24-25, 104; Doc. 28-46).[5]

Ms. Samuels is the only female traffic signal worker in the traffic department.  (Doc. 28-1, pp. 27-28; Doc. 28-20, pp. 7-8).  As a traffic signal worker, Ms. Samuels works in the field to install traffic signals, change bulbs in traffic signals and crosswalks, and perform preventative maintenance on traffic signals, among other things.  (Doc. 28-36, p. 1).

Ms. Samuels's immediate supervisors are defendants Kelvin Blevins and Thomas Stinson; defendant Will Goodman is the chief of operations for the traffic department.  (Doc. 28-1, p. 39; Doc. 28-29, p. 7).  Before he became the chief of operations in approximately 2009, Mr. Goodman was a traffic control technician and was one of Ms. Samuels's immediate supervisors.  (*See* Doc. 28-29, pp. 8-9; Doc. 28-30, pp. 52-53).

Mr. Goodman often refers to Ms. Samuels as "little lady" when he sees her. (Doc. 28-29, p. 17).   When he was her immediate supervisor, Mr. Goodman told Ms. Samuels that she "should work in the office somewhere and not out in the field

---

[5] Ms. Samuels contends that the City promoted her to a traffic signal worker because she filed an EEOC charge.  (Doc. 28-3, pp. 24-25).

with all the men." (Doc. 28-3, pp. 4, 17).[6]  Mr. Goodman also commented on Ms.

Samuels's clothes and told her to be careful about what she wore to work around

the men.  (Doc. 28-30, pp. 50-54).[7]

B.    Ms. Samuels's 2014 Application and Interview for a Promotion

In January or February 2014, Ms. Samuels applied for a promotion to a

traffic control technician position in the traffic department.  (Doc. 28-2, p. 2; Doc.

28-31).  A traffic control technician's duties include receiving job assignments,

working with crews in the field, installing control boxes, and wiring signal lights

and traffic control boxes.  (Doc. 28-1, p. 31; Doc. 28-2, pp. 2-3; Doc. 28-35).  The

traffic department has no female traffic control technicians.  (Doc. 28-29, p. 7).

According to Ms. Samuels, she has been performing some of the duties of a traffic

control technician, including working inside the traffic control boxes, since 2006.

(Doc. 28-1, pp. 30-33).[8]

---

[6]A co-worker in the traffic department, who retired in 2010, attested that he overhead
conversations in which Mr. Goodman indicated that he did not want women working in the
department.  (Doc. 28-6, p. 1).

[7] Ms. Samuels complained to Mr. Goodman's supervisor about the comments regarding her
clothing, but it is unclear from the record when she made the complaint.  (*See* Doc. 28-30, pp.
50-54).

[8] Three of Ms. Samuels's former co-workers confirmed that Ms. Samuels has performed duties
of a traffic control technician while working as a traffic signal worker.  (*See* Doc. 28-7; Doc. 28-
8; Doc. 28-9).   Additionally, Mr. Stinson testified that he has heard that Ms. Samuels
occasionally performs the work of a traffic control technician.  (Doc. 28-28, p. 10).

The Jefferson County Personnel Board certified Ms. Samuels as qualified for the traffic control technician position and placed her name on the list of qualified applicants. (Doc. 28-31). Mr. Goodman, Mr. Blevins, and Mr. Stinson reviewed the certification list and selected five candidates from the list to interview. (Doc. 28-29, p. 19). The five included Ms. Samuels and two men who worked in the traffic department. (Doc. 28-2, p. 11; Doc. 28-31). According to Mr. Goodman, the department generally "interview[s] anyone that [they] find on the list in house" because "it's fair, and it's good for morale." (Doc. 29-29, p. 20).

Before the interviews, Mr. Goodman prepared "job rating factors," or interview questions, for the traffic control technician position, and the Personnel Board approved the questions. (*See* Doc. 28-10, p. 17; Doc. 28-29, p. 23; Doc. 28-30, p. 34; Doc. 28-38). The Personnel Board also approved a list of expected responses to the interview questions and grading standards for the applicants' responses. (*See* Doc. 28-11, p. 18; Doc. 28-39). The interviewers compare an applicant's responses to the interview questions with the expected responses and then score the applicant's responses based upon the approved grading standards. (*See* Doc. 28-11, pp. 18-19; Doc. 28-29, p. 23; Doc. 28-39). There are three

possible scores for a job rating factor: (i) does not meet job requirements, (ii) meets job requirements, or (iii) exceeds job requirements. (*See* Doc. 28-39). [9]

Mr. Goodman, Mr. Blevins, and Mr. Stinson all asked questions and took notes during the interviews for the traffic control technician position. (Doc. 28-2, p. 11; Doc. 28-11, pp. 12-13; Doc. 28-28, pp. 16, 24-25; Doc. 28-29, p. 24). All three men recorded their notes on applicant rating forms that identify the eleven job rating factors for the position. (Doc. 28-28, pp. 23-25; *see also* Doc. 28-32). The applicant rating forms have space for the interviewers to record an applicant's responses to the interview questions and space to score the applicant's responses. (*See* Doc. 28-29, p. 23; Doc. 28-32; Doc. 28-38; Doc. 28-39; Doc. 28-40; Doc. 28-

---

[9] For example, the second job rating factor, or interview question, for the traffic control technician position and the expected responses are as follows:

> Describe your experience or training using electronic test equipment to troubleshoot and repair electronic circuits.

> Expected Responses:
> (1) Class work using analog/digital multimeters to test DC/AC voltage, current and resistance
> (2) Work experience using analog/digital multimeters to test DC/AC voltage, current and resistance
> (3) Experience using an oscilloscope
> (4) Knowledge of electronic circuits (Resistors, capacitors, parallel, and series circuits)
> (5) Knowledge of microprocessors

(Doc. 28-39, p. 1). The grading standards for the second job rating factor indicate that if the applicant does not give any of the expected responses, then he or she does not meet the job requirements; if the applicant gives 1 or 2 of the expected responses, then he or she meets the job requirements; and if the applicant gives 3 or more of the expected responses, then he or she exceeds the job requirements. (*Id.*).

41). Mr. Stinson destroyed his notes at some point after the interviews. (*See* Doc. 28-28, pp. 17, 22). The defendants contend that Mr. Stinson destroyed his notes because he had not taken a required class on structured interviews and was sitting in on the interview for training purposes. (*See* Doc. 28-11, p. 13; Doc. 28-28, p. 16; Doc. 28-29, pp. 24, 26).[10]

Ms. Samuels's interview for the traffic control technician took place on February 20, 2014, and Mr. Goodman, Mr. Blevins, and Mr. Stinson conducted the interview. (Doc. 28-2, pp. 3, 11; Doc. 28-32). According to Ms. Samuels, Mr. Goodman's and Mr. Blevins's notes from the interview do not accurately reflect her complete responses to the questions. (Doc. 23-2, pp. 6-9). For example, Ms. Samuels testified that Mr. Goodman and Mr. Blevins did not record her full response to the second question or job rating factor on her applicant rating forms. (*Id.*; *see also* Doc. 28-32).

Ms. Samuels's applicant rating forms reflect that Mr. Goodman and Mr. Blevins scored her response to the second interview question as "does not meet the job requirements." (Doc. 28-32, pp. 1, 3). This was the only job rating factor for which Ms. Samuels did not meet the job requirements for the traffic control technician position. (*Id.*). If Mr. Goodman and Mr. Blevins had recorded Ms. Samuels's full response to the second question accurately (accepting as true for

---

[10] Nothing in Mr. Goodman's personnel file indicates that he completed a class on structured interviews. (*See* Doc. 28-15).

purposes of summary judgment Ms. Samuels's statement that they did not), then Ms. Samuels could have scored better on the second job rating factor. (*See* Doc. 28-39, p. 1; Doc. 28-2, p. 6).

Mr. Goodman and Mr. Blevins did not credit Ms. Samuels for giving any of the expected responses to the second interview question. (*See* Doc. 28-32, pp. 1, 3; Doc. 28-39, p. 1). But Ms. Samuels states that she gave a response that included information corresponding to the expected responses. Ms. Samuels's applicant rating forms and testimony reflect that she gave the following information in response to the second job rating factor or interview question:

(1)     She had "knowledge of electronic circuits." (Doc. 28-32, p. 1).

(2)     She has experience testing the 170 controllers. (*See* Doc. 28-32, p. 1; *see also* Doc. 28-11, p. 31; Doc. 28-12, p. 1).

(3)     She has experience repairing chips inside the 170 controllers. (Doc. 28-32, pp. 1, 3).

(4)     She had knowledge and experience working with meters "to test the AC and DC voltage to make sure you're getting the correct input coming in." (Doc. 28-2, p. 6).

Knowledge of electronic circuits, the first response above, is one of the expected responses to the second interview question. (Doc. 28-39, p. 1). Ms. Samuels said she has experience testing the 170 controllers, which requires using a meter or oscilloscope. (*See* Doc. 28-12, p. 2). Experience using an oscilloscope is an expected response to the second question. (Doc. 28-39, p. 1). Ms. Samuels also

said she has experience repairing chips, which are the same as microprocessors. (Doc. 28-10, p. 16; Doc. 28-11, p. 31). Knowledge of microprocessors is an expected response to the second question. (Doc. 28-39, p. 1). Finally, one of the expected responses to the second question is "work experience using analog/digital multimeters to test DC/AC voltage, current and resistance," which is similar to Ms. Samuels's fourth response above. (Doc. 28-39, p. 1). If Mr. Goodman or Mr. Blevins gave Ms. Samuels credit for three of the four responses described above, then Ms. Samuels would have scored "exceeds job requirements" for the second job rating factor. (*See* Doc. 28-39, p. 1).

After the interviews, Mr. Goodman, Mr. Blevins, and Mr. Stinson discussed all of the candidates' responses and selected a candidate for the position. (Doc. 28-11, p. 18; Doc. 28-29, p. 24; Doc. 28-4, p. 4). Ms. Samuels did not receive the promotion. Instead, the defendants selected Henry Ray, Jr. for the traffic control technician position. (Doc. 28-31; Doc. 28-42). The Personnel Board approved the promotion decision effective March 8, 2014. (Doc. 28-42).

C.    Ms. Samuels's 2014 EEOC Charges

On June 25, 2014, George Singleton, the lead technician with whom Ms. Samuels was working, told Ms. Samuels that she probably needed to go home because she had spots on her pants due to her menstrual cycle. (Doc. 28-2, p. 25). Ms. Samuels told Mr. Singleton that she was going home and would not be back to

work that day. (*Id.*). The next day, she received a verbal reprimand from Mr. Goodman, which was memorialized in a writing signed by Mr. Blevins and Mr. Stinson. (Doc. 26-1, p. 2; Doc. 28-5). Ms. Samuels received the reprimand for two reasons: (1) for not maintaining the required minimum amount of sick leave and (2) for leaving work without proper management authorization. (Doc. 26-1, p. 2; Doc. 28-5).[11] Ms. Samuels refused to sign the reprimand because she did not believe that she violated City policies. (Doc. 28-2, p. 27; *see also* Doc. 28-5).

After she received the verbal reprimand, Ms. Samuels filed an EEOC charge on June 30, 2014 alleging gender discrimination and retaliation. (Doc. 28-18). In her EEOC charge, Ms. Samuels asserts that she was discriminated and retaliated against based on the City's failure to promote her to the traffic control technician position in February 2014 and on the City's June 26, 2014 reprimand. (*Id.*).

In October 2014, the City had a second opening for a traffic control technician position. (*See* Doc. 28-43). The Personnel Board placed Ms. Samuels's name on the certification list for the position based upon her application for the first opening. (Doc. 28-43; *see also* 28-31). Ms. Samuels did not receive the position. On October 27, 2014, the defendants selected Rayburn Moore, III for the

---

[11] On March 4, 2015, the traffic department rescinded the portion of the reprimand related to maintaining a minimum amount of sick leave. (Doc. 28-20).

second traffic control technician position. (Doc. 28-4; Doc. 28-47).[12] The Personnel Board approved the promotion decision effective November 15, 2014. (Doc. 28-47). After the City passed over Ms. Samuels for the second traffic control technician position, she filed an amended EEOC charge on November 25, 2014, in which she added allegations related to the October 2014 promotion decision. (*Id.*).

Since Ms. Samuels filed her 2014 EEOC charges, the City has had two more openings for the traffic control technician position. (Doc. 28-24; Doc. 28-26). Ms. Samuels did not receive either position. The City hired two men to fill the positions. (*See id.*). The Personnel Board approved Kenneth McKenzie for one of the positions effective June 1, 2015, and approved Jeremy Copeland for the other position effective October 31, 2015. (*Id.*).

The EEOC concluded its investigation into Ms. Samuels's discrimination and retaliation charge and issued a right to sue letter on May 20, 2015. (Doc. 25-11). This action followed.

D.     Allegedly Retaliatory Acts

According to Ms. Samuels, the City's retaliatory actions continued after the EEOC concluded its investigation of her charges. On October 8, 2015, the City

---

[12] Ms. Samuels did not receive an interview for the position. (*See* Doc. 28-2, pp. 29-30). The department did not interview candidates for the second traffic control technician position because the defendants selected the applicant to fill the position from the applicants and for the first opening in February 2014. (*See* Doc. 28-2, p. 30; Doc. 28-29, p. 37; Doc. 28-43).

followed and monitored the truck that Ms. Samuels usually was assigned to work in. (Doc. 28-2, p. 33). Ms. Samuels did not work on October 8 because she had called in sick that morning. (*Id.*). The City employees who were working on the truck that day did not do the work assigned to them, but instead were photographed "loafing around" and using the truck to drive to lunch outside the city limits. (Doc. 28-2, p. 38).

Second, on approximately March 16, 2016, Mr. Goodman informed Mr. Stinson that Ms. Samuels could not sit in her car in the afternoon to wait for the end of her shift as she had been doing. (Doc. 28-3, pp. 5-6; Doc. 28-21). Mr. Stinson sent a text to Ms. Samuels telling her that she could not sit in her car at the end of the day. (Doc. 28-21).

Next, the City did not provide Ms. Samuels with enough uniforms to wear during the week. (Doc. 28-3, p. 12). Ms. Samuels needed four sets of uniforms for the week, but the City provided only three. (*Id.*). Even though Mr. Goodman knew the City had not given Ms. Samuels four sets of uniforms, he gave Ms. Samuels a verbal warning for not wearing her uniform pants to work every day. (Doc. 28-29, p. 54). Finally, Ms. Samuels attests that "[a]fter the depositions in this case, [Mr.] Goodman sent orders that [she is] not allowed to work inside the boxes on the side of the road . . . ." (Doc. 28-53, p. 2).

## III.  ANALYSIS

### A.  <u>Motion to Strike</u>

The defendants ask the Court to strike all or part of five affidavits that Ms. Samuels relies upon in her response to the defendants' motion for summary judgment.  (Doc. 32).[13]  Specifically, the defendants object to statements contained in the affidavits of Ms. Samuels, Willie Kelly, Rozell Ravell, Nathaniel Stanley, and George Singleton on the grounds that they are inadmissible hearsay, lack foundation, and are immaterial.  (*Id.*).  Under Rule 56(c)(2) of the Federal Rules of Civil Procedure, at the summary judgment stage, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."  FED. R. CIV. P. 56(c)(2).  These objections function like trial objections adjusted for the pretrial setting, and "[t]he burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated."  FED. R. CIV. P. 56(c)(2) advisory committee's note (2010 amendments).

---

[13] Effective December 1, 2010, motions to strike summary judgment evidence are no longer appropriate.  *See* Fed. R. Civ. P. 56(c)(2) advisory committee's note (2010 amendments) ("There is no need to make a separate motion to strike."); *Campbell v. Shinseki*, 546 Fed. Appx. 874, 879 (11th Cir. 2013) ("The plain meaning of [amended Rule 56(c)(2)] show[s] that objecting to the admissibility of evidence supporting a summary judgment motion is now a part of summary judgment procedure, rather than a separate motion to be handled preliminarily . . . .").  Accordingly, the Court construes the defendants' motion to strike as objections to the material cited to support or dispute the facts on summary judgment.

Rule 56(c)(2) enables a party to submit evidence that ultimately will be admissible at trial in an inadmissible form at the summary judgment stage. Under the rule, "'a district court may consider a hearsay statement in passing on a motion of summary judgment if the statement could be reduced to admissible evidence at trial or reduced to admissible form.'" *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1293-94 (11th Cir. 2012) (quoting *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999)). A district court has broad discretion to determine at the summary judgment stage what evidence it will consider pursuant to Rule 56(c)(2). *See Green v. City of Northport*, 2014 WL 1338106, at *1 (N.D. Ala. March 31, 2014).

The defendants first object to statements in Ms. Samuels's affidavit on the grounds that the statements are inadmissible hearsay. (Doc. 32, pp. 4-5). Specifically, the defendants object to Ms. Samuels's statement that co-workers left work early for the day after telling only a "lead" on their truck and her statement that Mr. Goodman "sent orders that she is not allowed to work inside the boxes on the side of the road . . . anymore." (*Id.* (citing Doc. 28-53)).[14] Even if in their current form the statements constitute inadmissible hearsay, *see* FED. R. EVID. 801(c), Ms. Samuels may avoid a hearsay objection at trial by calling her co-workers and Mr. Goodman as witnesses.

---

[14] Mr. Goodman's statement is admissible as an opposing party's statement or on cross-examination as a prior statement. *See* Fed. R. Evid. 801(d).

The same analysis applies to the statement in Mr. Kelly's affidavit that he overheard "bits and pieces of conversations that Mr. Goodman had, and [Mr. Goodman] did not want any females in the [traffic] department," (Doc. 28-6, p. 1), and to the statements in Mr. Singleton's affidavit that a new co-worker did not like working with Ms. Samuels because she is female and that Mr. Singleton overheard Mr. Ray cursing at other employees. (Doc. 28-9, p. 2). Ms. Samuels may call Mr. Goodman, Mr. Ray, and the new co-worker as witnesses at trial to avoid a hearsay objection to the evidence in the affidavits.

The defendants also object to statements contained in the affidavits of Ms. Samuels, Mr. Kelly, Mr. Ravell, and Mr. Stanley on the grounds that they are speculative or lack foundation. (Doc. 32, pp. 5-6 (citing Docs. 28-6, 28-7, 28-8, & 28-53)). However, Ms. Samuels could present the statements in admissible form at a trial of this matter. For example, she could call the affiants as witnesses in a potential trial and elicit testimony to establish the basis of the witnesses' knowledge of the information. In that way, Ms. Samuels may avoid objections on the grounds that the statements are speculative or lacking foundation.

Because Ms. Samuels may be able to submit the evidence at issue in an admissible form at a potential trial of this matter, the Court overrules the defendants' objections at this stage in the case. Moreover, the issue is largely moot at the summary judgment stage because the Court finds that there are triable

disputed issues of fact without resorting to the evidence that the defendants challenge. Accordingly, the Court **DENIES** the defendants' motion to strike. (Doc. 32).

### B.    Gender Discrimination Claims Against the City

Ms. Samuels asserts gender discrimination claims against the City based on her allegation that the City discriminated against her when it failed to promote her to a traffic signal technician position and when it gave her a written reprimand for alleged policy violations. (Doc. 9, p. 10). The City argues that Ms. Samuels cannot establish a prima facie claim of discrimination or show that the City's legitimate, non-discriminatory reasons for the its actions are pretext for discrimination. The Court is not persuaded.

Where, as here, there is no statistical or direct evidence of discrimination, a plaintiff may rely on circumstantial evidence to establish her claim, employing the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981).[15] Under *McDonnell Douglas*, a plaintiff first must establish a prima

---

[15] "Direct evidence is evidence that establishes the existence of discriminatory intent behind the employment decision without any inference or presumption." *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998) (citation omitted). "'[O]nly the most blatant remarks, whose intent could be nothing other than to discriminate on the [protected classification]' are direct evidence of discrimination." *Scott v. Suncoast Beverage Sales, Ltd.*, 295 F.3d 1223, 1227 (11th Cir. 2002) (citation omitted). "[R]emarks by non-decisionmakers or remarks unrelated to the decisionmaking process itself are not direct evidence of discrimination." *Standard*, 161 F.3d at 1330 (citation omitted).

facie case by presenting evidence that (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) she was treated less favorably than a similarly-situated individual outside of her protected class. *Maynard v. Bd. of Regents of Div. of Fla. Dep't of Educ.*, 342 F.3d 1281, 1289 (11th Cir. 2003) (citing *McDonnell Douglas*, 411 U.S. at 802, 93 S. Ct. at 1817). "The methods of presenting a prima facie case are flexible and depend on the particular situation." *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010); *see also Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1275 (11th Cir. 2008) ("More than one formulation of the elements of a prima facie case exist."). "The successful assertion of a prima facie case then creates a rebuttable presumption that the employer unlawfully discriminated against the plaintiff." *Rioux*, 520 F.3d at 1275 (internal quotation marks and citations omitted).

---

Ms. Samuels presented evidence that Mr. Goodman told her that she should be working in an office rather than out in the field with men and that he told others "he did not want any females in the [traffic] department." (Doc. 28-3, pp. 3-4; Doc. 28-6, p. 1). Mr. Goodman made the statement to Ms. Samuels when he worked as a technician for the City and before he became the chief of operations for the traffic department, and he made the statement to others before 2010. (Doc. 28-3, p. 4; *see also* Doc. 28-6). While Mr. Goodman's statements to Ms. Samuels and others are blatantly discriminatory, he was not the decisionmaker when he made the remarks, and there is nothing in the record to suggest that he made any such remarks in the context of deciding whether to promote Ms. Samuels. Therefore, based on the record before the Court, Mr. Goodman's statements are not direct evidence of discrimination. Ms. Samuels does not argue that she presented direct evidence of discrimination. (*See* Doc. 29). Therefore, the Court analyzes Ms. Samuels's gender discrimination claim using the burden-shifting framework for circumstantial evidence.

If the plaintiff establishes a prima facie case, then the burden shifts to the employer to produce evidence of a legitimate, non-discriminatory reason for the challenged action. *Rioux*, 520 F.3d at 1275. The employer's burden is very light. If the employer satisfies its burden, then the presumption that the employer unlawfully discriminated against the plaintiff drops out of the case, and the burden shifts back to the plaintiff to prove the employer's "proffered reason really is a pretext for unlawful discrimination." *Id.* (internal quotation marks and citations omitted). The plaintiff can demonstrate that the employer's proffered reasons are pretext "directly, by persuading the court that a discriminatory reason more likely than not motivated the employer, or indirectly, by showing 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could find them unworthy of credence.'" *Paschal v. United Parcel Serv.*, 573 Fed. Appx. 823, 825 (11th Cir. 2014) (quoting *Alvarez v. Royal Atlantic Developers, Inc.*, 610 F.3d 1253, 1265 (11th Cir. 2010)).

"If a plaintiff 'presents circumstantial evidence that creates a triable issue of fact concerning the employer's discriminatory intent,' she 'will always survive summary judgment.'" *Chapter 7 Trustee v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1255 (11th Cir. 2012) (quoting *Smith v. Lockheed-Martin*, 644 F.3d 1321, 1328 (11th Cir. 2011)). As the Eleventh Circuit has explained, the *McDonnell Douglas*

framework is not "the only way to use circumstantial evidence to survive a motion for summary judgment." *Gate Gourmet, Inc.*, 683 F.3d at 1255.

1. Ms. Samuels's Prima Facie Case

As a female, Ms. Samuels is a member of a protected class. *See* 42 U.S.C. 2000e-2(a). The other three elements of her prima facie case are in dispute. The Court finds that Ms. Samuels has introduced sufficient evidence to establish a prima facie case of gender discrimination based on the City's failure to promote her to a traffic control technician position.

a. *Adverse employment action*

"'An adverse employment action is an ultimate employment decision, such as discharge or failure to hire, or other conduct that alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee.'" *Van Voorhis v. Hillsborough Cty. Bd. of Cty. Comm'rs*, 512 F.3d 1296, 1300 (11th Cir. 2008) (quoting *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 587 (11th Cir. 2000) (internal quotation omitted)). Ms. Samuels bases her gender discrimination claim on the City's failure to promote her in February and October 2014. (Doc. 9, p. 10).

The City's failure to promote Ms. Samuels had an adverse effect on her compensation and her status as an employee, and the City does not argue

otherwise. (*See* Doc. 25, p. 20; Doc. 28-1, p. 38; Doc. 28-2, p. 2). Thus, Ms. Samuels established that she suffered an adverse employment action based upon the City's failure to promote her to a traffic control technician position. *See Van Voorhis*, 512 F.3d at 1300; *Pennington v. City of Huntsville,* 261 F.3d 1262, 1267 (11th Cir. 2001) ("[G]enerally the denial of a promotion is an adverse employment action.") (citing *Walker v. Mortham*, 158 F.3d 1177, 1187 (11th Cir. 1998)).[16]

b.    *Ms. Samuels was qualified for the position*

In the context of a discrimination claim based on a failure to promote, a plaintiff must establish that she was qualified for the position at issue. *See Kidd v.*

---

[16] In her amended complaint, Ms. Samuels asserts that the City discriminated against her based on her gender when it gave her the June 26, 2014 reprimand. (Doc. 9, p. 10). The City argues that the reprimand was not an adverse employment action because it did not have a tangible effect on Ms. Samuels's employment and because the City reprimanded male employees for the same violations. (Doc. 25, pp. 16-17, 20). Ms. Samuels has not cited evidence showing that the reprimand had an actual, tangible effect on her employment with the City. (*See* Doc. 29, pp. 25-30). The record shows that the reprimand did not affect Ms. Samuels's pay or benefits and that the City reprimanded Mr. Ray for violating the same policies. (Doc. 28-2, p. 27; Doc. 28-29, p. 56; Doc. 28-30, pp. 33, 40). Accordingly, Ms. Samuels did not raise a question of fact regarding the June 2014 reprimand. *See Cotton v. Cracker Barrel Old Country Store, Inc.*, 434 F.3d 1227, 1234 (11th Cir. 2006) ("When an employer applies its standard policies in a nondiscriminatory manner, its action is not objectively adverse."); *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1240-41 (11th Cir. 2001) (finding that "job performance memoranda that did not cause any tangible effects on the employee's terms or benefits were not adverse employment actions).

Additionally, in response to the defendants' motion for summary judgment, Ms. Samuels did not argue that the June 26, 2014 reprimand was an adverse employment action, and she relied only upon the City's failure to promote her to support her gender discrimination claim. (*See* Doc. 29, pp. 25-30). Therefore, Ms. Samuels abandoned her gender discrimination claim based on the written reprimand she received from the City. *See Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995), *cert denied*, 516 U.S. 817 (1995) ("[G]rounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned."). As a result, the City is entitled to summary judgment on Ms. Samuels's gender discrimination claim based upon the written reprimand issued to Ms. Samuels on June 26, 2014.

*Mando American Corp.*, 731 F.3d 1196, 1204 (11th Cir. 2013) (citing *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1174 (11th Cir. 2010)). In this case, the Jefferson County Personnel Board certified that Ms. Samuels was qualified for the traffic control technician position and placed her name on the list for the position in February and October, 2014. (Doc. 28-31; Doc. 28-43). Mr. Goodman admitted that Ms. Samuels "made the [certification] list, so she was qualified" for the position. (Doc. 28-29, p. 20). Additionally, Ms. Samuels testified that she received training in the field for wiring control boxes, which is one of the duties of a traffic control technician, and she testified that she has been performing the duties of a traffic control technician while working in the field. (Doc. 28-1, pp. 30-33). Non-party witnesses confirm Ms. Samuels's testimony. *See* p. 5, n.8, above. Based on this evidence, Ms. Samuels has shown that she was qualified to be a traffic control technician.

c.    *Evidence that Ms. Samuels was treated less favorably than similarly-situated men*

Finally, to establish her prima facie case of gender discrimination, Ms. Samuels must show that the City treated her less favorably than similarly-situated male employees. In the context of her discriminatory failure to promote claim, that simply requires Ms. Samuels to show that a male was hired for the position she applied for and did not receive. *Williams v. Waste Mgmt., Inc.*, 411 Fed. Appx. 226, 228 (11th Cir. 2011) (citing *Combs v. Plantation Patterns*, 106 F.3d 1519,

1539 n.11 (11th Cir. 1997)); *Springer v. Convergys Customer Mgmt. Grp. Inc.*, 509 F.3d 1344, 1347 n.2 (11th Cir. 2007) (citations omitted). Here, the City hired Mr. Ray and Mr. Moore for the available traffic control technician positions. (Doc. 28-31; Doc. 28-42; Doc. 28-43; Doc. 28-47).[17] Accordingly, the Court finds that Ms. Samuels has established her prima facie claim for discriminatory failure to promote.

2. <u>The City's Proffered Reason for its Decision and Pretext</u>

The City asserts that it hired Mr. Ray and Mr. Copeland instead of Ms. Samuels for the traffic control technician positions because the men were more qualified for the position than Ms. Samuels. Specifically, the City asserts that the two men had more certification and training than Ms. Samuels and that "they both scored higher than [her] on rating factors for the traffic control technician position." (Doc. 25, pp. 15,-16, 21; Doc. 30, pp. 11-13). This is enough to carry the City's exceedingly low burden. Nonetheless, Ms. Samuels argues that the City's proffered reasons are pretext for its actual discriminatory intent. (Doc. 29, p. 27). The Court finds Ms. Samuels's evidence and arguments persuasive.

With respect to the City's assertion that it promoted Mr. Ray and Mr. Moore instead of Ms. Samuels because the two men had more certifications and training

---

[17] After Ms. Samuels filed her complaint in this action, the City hired two more male employees for traffic control technician positions. (Doc. 28-24; Doc. 28-26).

than Ms. Samuels, the City did not cite evidence in the record to support that assertion. (*See* Doc. 25, pp. 15-16). The record shows that in her application for the traffic control technician position, Ms. Samuels reported that she had taken 32 hours of coursework at Rets Electronics. (Doc. 28-45, p. 2). Ms. Samuels asserts that the City did not request or require documentation of the coursework she listed in her application. (Doc. 28-53, p. 1). Mr. Goodman testified that the City asked for a transcript from Ms. Samuels, and she told him that a transcript was not available. (Doc. 28-29, p. 53). The Court may not make credibility determinations when ruling on a motion for summary judgment, and when factual disputes arise, the Court must credit the non-moving party's version of the facts. *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013) (quoting *Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006)). Mr. Goodman also testified that Mr. Moore had his journeyman electrician's license before the City selected him to be a traffic control technician. (Doc. 28-29, p. 45-46, 49). However, the record shows that Mr. Moore did not actually receive his license until 21 days after the October 27, 2014 decision to promote him to the technician position. (Doc. 28-47; Doc. 28-51).

With respect to the job rating factors for the traffic control technician position, Ms. Samuels scored less favorably than Mr. Ray and Mr. Moore on only one of the eleven job rating factors for the traffic control technician position. (*See*

Doc. 28-32; Doc. 28-40; Doc. 28-41). Specifically, Ms. Samuels's applicant rating forms reflect that she did not meet the job requirements for the second job rating factor, while Mr. Ray and Mr. Moore exceeded the job requirements for that factor. (Doc. 25-17, p. 4-7; Doc. 25-19, pp. 13-16; Doc. 25-20, pp. 14-17). Ms. Samuels testified that Mr. Goodman and Mr. Blevins did not record her full response to the second job rating factor. (Doc. 28-2, pp. 6-7; Doc. 28-3, p. 26). As discussed above in section II(B) and assuming the truth of Ms. Samuels's assertion, if Mr. Goodman and Mr. Blevins had recorded Ms. Samuels's full response to the second question, then Ms. Samuels could have scored "exceeds job requirements" for the second job rating factor. *See* pp. 9-10, *supra*. If the Court credits Ms. Samuels's full responses to the interview questions, as it must at his stage, then she should have received the same score on the job rating factors as the male candidates who were selected for the traffic control technician position.

Mr. Stinson also asked questions during Ms. Samuels's interview and took notes on an applicant rating form, but his notes are not in the record. (Doc. 28-2, p. 3, 10-11; Doc. 28-11, p. 12; Doc. 28-28, p. 17; Doc. 28-33, p. 12). The defendants testified that Mr. Stinson destroyed his notes after the interview because he only sat in on the interview for training purposes. (Doc. 28-11, pp. 13-14; Doc. 28-28, pp. 16-17; Doc. 28-29, pp. 24-26). Contrary to this testimony, the defendants admitted in their interrogatory responses that Mr. Stinson participated

in the decision not to promote Ms. Samuels to a traffic control technician position. (*See* Doc. 28-4, p. 4).

Considered in the light most favorable to Ms. Samuels and with the other circumstantial evidence of gender discrimination, the Court finds that the evidence discussed above raises a genuine question of material fact regarding Ms. Samuels's qualifications for the traffic control technician position. Consequently, a jury must decide whether the City's proffered reasons for not promoting Ms. Samuels are pretext for discriminatory purposes. The Court denies the City's motion for summary judgment on Ms. Samuels's gender discrimination claim based on the failure to promote her to a traffic control technician position.

### D. <u>Retaliation Claim Against the City</u>

Ms. Samuels asserts a retaliation claim against the City under Title VII based on allegations that the City retaliated against her after she objected to and reported gender discrimination. (Doc. 9, pp. 11-12). The City asks the Court to enter judgment in its favor on the claim in part because Ms. Samuels cannot establish a prima facie claim of discrimination. The Court agrees.

Title VII prohibits employers from retaliating against an employee "because [s]he has opposed any practice made an unlawful employment practice by [Title VII], or because [s]he has made a charge . . . under [Title VII]." 42 U.S.C. § 2000e-3(a). The *McDonnell Douglas* burden-shifting analysis applies to

retaliation claims based on circumstantial evidence. *Furcron v. Mail Centers Plus, LLC*, 843 F.3d 1295, 1310 (11th Cir. 2016) (citations omitted).[18] "To establish a prima facie case of retaliation under Title VII, 'the plaintiff must show (1) that she engaged in statutorily protected expression; (2) that she suffered an adverse employment action; and (3) that there is some causal relation between the two events." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007) (quoting *Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1021 (11th Cir. 1994)). The establishment of a prima facie case "creates a rebuttable presumption that the employer acted illegally." *Underwood v. Perry*, 431 F.3d 788, 794 (11th Cir. 2005).

### 1. <u>Statutorily Protected Activity</u>

Filing a charge of discrimination with the EEOC is a statutorily protected activity. *Johnson v. Booker T. Washington Broad. Serv., Inc.*, 234 F.3d 501, 507 (11th Cir. 2000). The City admits that Ms. Samuels filed an EEOC charge on June 30, 2014 alleging gender discrimination and retaliation and that she filed an amended charge after the City promoted Mr. Moore in November 2014. (Doc. 25, p. 5, ¶¶ 21 & 25; *see also* Doc. 9-1; Doc. 9-2). Additionally, Ms. Samuels presented evidence that she filed a prior charge with the EEOC in 2009. (Doc. 28-

---

[18] Ms. Samuels does not argue that she produced direct evidence of retaliation. (*See* Doc. 29, pp. 30-35).

1, pp. 21-22; Doc. 28-30, p. 23). When Ms. Samuels filed EEOC charges, she engaged in statutorily protected activity.

Ms. Samuels also presented evidence that she complained to a supervisor about Mr. Goodman's comments regarding her clothes, though it is not clear when Ms. Samuels made that complaint. (*See* Doc. 28-30, pp. 51-54). Internal complaints to a supervisor about discrimination or harassment also are protected activities. *Booker T. Washington Broadcasting Service, Inc.*, 234 F.3d at 507. The substance of Ms. Samuels's complaint is not clear from the record. Nevertheless, for purposes of this memorandum opinion, the Court assumes without deciding that Ms. Samuels's complaint was a protected activity.

## 2. Adverse Employment Action

Next, Ms. Samuels "must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006) (internal quotation marks omitted)). Here, Ms. Samuels alleges that the City retaliated against her by: (1) reprimanding her in June 2014; (2) not interviewing her for a second open traffic control technician position in October 2014; (3) not promoting her to the traffic control technician position in October 2014; and

(4) following and monitoring the truck to which she normally was assigned in an effort to catch her doing something wrong in October 2015. (Doc. 9, pp. 11-12). Ms. Samuels also asserts that Mr. Goodman engaged in a series of retaliatory acts by watching her closely at work and ordering that she can no longer work inside the traffic control boxes. (Doc. 29, pp. 33-35).

As discussed above, Ms. Samuels has shown she suffered at least one adverse employment action based on the City's failure to promote her to the traffic control technician position. *See Pennington*, 158 F.3d at 1187; *see also* pp. 20-21, *supra*. Additionally, for purposes of this opinion, the Court assumes without deciding that the other alleged retaliatory acts by the defendants could have dissuaded a reasonable employee from making a charge of discrimination.

### 3. Causal Connection

"To establish a causal connection, a plaintiff must show that the decision-makers were aware of the protected conduct, and that the protected activity and the adverse action were not wholly unrelated." *Gupta*, 213 F.3d at 590. "'Generally, a plaintiff can show the two events are not wholly unrelated if the plaintiff shows that the decision maker was aware of the protected conduct at the time of the adverse employment action.'" *Jones v. Gulf Coast Health Care of Del., LLC*, 854 F.3d 1261, 1271 (11th Cir. 2017) (quoting *Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1234 (11th Cir. 2010)).

The City argues that Ms. Samuels did not establish causation because she does not present evidence that a decision maker was aware of her protected activity nor does she present evidence to suggest a causal connection between any protected activity and an adverse employment action. (Doc. 25, pp. 23-24; Doc. 30, p. 14). With respect to the decision makers' knowledge, Mr. Goodman was aware of Ms. Samuels's 2009 EEOC charge and her June 30, 2014 EEOC charge, though he claimed that he cannot remember when he first learned of her June 2014 charge. (Doc. 28-29, p. 63; Doc. 28-30, pp. 23-24).[19] Mr. Blevins also knew that Ms. Samuels filed an EEOC charge, though he could not say when he received notice of the charge. (Doc. 28-11, p. 25). Finally, Greg Dawkins, the director of the traffic department, testified that he probably was notified of Ms. Samuels's June 2014 EEOC charge within ten days after it was filed and that he conducted his own investigation of the charge. (Doc. 28-10, pp. 14-15). Thus, Ms. Samuels has presented sufficient evidence that the decision makers knew of her EEOC charges when the men decided not to interview or promote her in October 2014.[20]

---

[19] Mr. Goodman also was aware that someone complained to his supervisor about his comments to Ms. Samuels regarding the clothes she wore to work, and he testified that only he and Ms. Samuels were present when he made the comments to her. (Doc. 28-30, pp. 52-53). This also creates a question of fact.

[20] The defendants acknowledge that Mr. Goodman, Mr. Blevins, Mr. Stinson, and Mr. Dawkins are the employees who made the decision not to promote Ms. Samuels to a traffic control technician position. (Doc. 28-4, p. 4).

Regarding her evidence of a causal connection, Ms. Samuels first contends that she can rely on Mr. Goodman's statement that she should be working in an office rather than in the field with the men and his alleged testimony that he only interviewed Ms. Samuels in February 2014 because it was good for morale. (Doc. 29, p. 33). Ms. Samuels, however, misinterprets Mr. Goodman's testimony regarding the interviews. Mr. Goodman testified that, "as a rule, we interview everyone [on the certification list who is] in house. [] I feel like it's fair, and it's good for morale." (Doc. 28-29, p. 20). He did not testify that the City only interviewed Ms. Samuels because she was in house or because it was good for morale. (*See id.*). Thus, Ms. Samuels cannot rely on Mr. Goodman's statement to establish a causal link between her protected activity and an adverse employment action.

Mr. Goodman's statement that Ms. Samuels should be working in the office rather than out in the field with the men, was clearly inappropriate, and it is at least circumstantial evidence of discriminatory intent. Nevertheless, there is no evidence that he had knowledge of Ms. Samuels's protected activity when he made the statement, or that he made the statement after she engaged in any protected activity. The record indicates that Mr. Goodman made the statement at least five years before the retaliatory acts began. (*See id.*, p. 4; Doc. 28-29, p. 9). Even when the evidence is viewed in the light most favorable to Ms. Samuels, the length

of time between the statement and the alleged retaliatory actions makes the connection between them too attenuated.[21]

In addition to Mr. Goodman's statements, Ms. Samuels relies on the temporal proximity between her protected activities and the adverse employment actions to prove causation. (*See* Doc. 29, p. 34). A plaintiff can establish a causal connection "by showing close temporal proximity between the statutorily protected activity and the adverse employment action. [] But mere temporal proximity, without more, must be 'very close.' [] A three to four month disparity between the statutorily protected expression and the adverse employment action is not enough." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (quoting *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)) (internal citations omitted); *see also Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006) ("[I]n the absence of any other evidence tending to show causation, a three and one-half month proximity between a protected activity and an adverse employment action is insufficient to create a jury issue on causation.").

In this case, none of the City's allegedly retaliatory actions took place within three months of Ms. Samuels's protected activities. First, the City's February 2014 promotion decision and the June 26, 2014 reprimand occurred at least five years

---

[21] Ms. Samuels also introduced evidence that a co-worker who retired in 2010 heard Mr. Goodman tell other employees that he did not want women in the traffic department. (*See* Doc. 28-6, p. 1). There is no evidence indicating when Mr. Goodman made those statements. Therefore, it would be speculative to find that Mr. Goodman's alleged statements are evidence of retaliatory intent.

after Ms. Samuels's 2009 EEOC charge and her complaint about Mr. Goodman's comment regarding her clothes. (*See* Doc. 28-1, p. 22; Doc. 28-30, p. 53). Next, a second position for a traffic control technician opened in October 2014, and the City did not interview or select Ms. Samuels for the position. (Doc. 28-2, pp. 29-30; Doc. 28-43). Based on the record before the Court, the City decided not interview or promote Ms. Samuels to the second traffic control technician position approximately three to four months after she filed her June 30, 2014 EEOC charge. The City also did not promote Ms. Samuels to a traffic control technician position in May 2015, approximately six months after Ms. Samuels filed her amended EEOC charge in November 2014. (*See* Doc. 28-24; Doc. 28-44). Finally, in October 2015, almost a year after the filing of Ms. Samuels's amended EEOC charge, the City once again passed over Ms. Samuels for a traffic control technician position and the City followed Ms. Samuels's truck. (Doc. 28-26). Because the allegedly retaliatory actions described above all occurred three months or more after Ms. Samuels's protected activities and there is no other evidence tending to show causation, the temporal proximity between the City's actions and the protected activity does not create a question of fact regarding causation. *See Cooper Lighting, Inc.*, 506 F.3d at 1364.

Likewise, the alleged chain of retaliatory acts by Mr. Goodman did not begin near enough in time to Ms. Samuels's protected activity to raise a question of

fact regarding causation. Ms. Samuels contends that Mr. Goodman was "obsessively checking up" on her by "finding out why she went home for the day, watching what she wears, watching where she [w]as sitting and waiting [at work], and having her truck followed." (Doc. 29, p. 34). Ms. Samuels does not cite evidence to suggest that any of Mr. Goodman's alleged acts occurred within three months of her protected activity.[22] Thus, Ms. Samuels offers insufficient evidence to create a question of fact regarding the causal link between Mr. Goodman's allegedly retaliatory acts and Ms. Samuels's protected activity.

Based on the foregoing, the Court finds that there is no genuine issue of material fact on the question of causation. As a result, Ms. Samuels has not established a prima facie case of retaliation. Therefore, the Court grants the defendants' motion for summary judgment on Ms. Samuels's retaliation claim against the City.

---

[22] Based on the evidence cited in Ms. Samuels's statement of facts, Mr. Goodman found out why Ms. Samuels went home early for the day on June 25, 2014. (*See* Doc. 28-2, p. 25; Doc. 28-5). Mr. Goodman watched what Ms. Samuels wore to work prior to 2009 when he commented on her clothes and on an undisclosed date when he gave her a verbal warning about uniforms. (*See* Doc. 28-3, p. 12; Doc. 28-20, p. 53). Mr. Goodman watched where Ms. Samuels sat and waited at work in March 2016. (*See* Doc. 28-3, pp. 5-6; Doc. 28-21). Finally, Mr. Goodman allegedly had Ms. Samuels's truck followed in October 2015. (*See* Doc. 28-2, p. 33). None of those actions occurred in close enough proximity to Ms. Samuels's protected activities to raise a question of fact regarding causation. *See Cooper Lighting, Inc.*, 506 F.3d at 1364.

### E. § 1983 Claims

#### 1. Claim against the City and Official Capacity Claim

Neither a municipality nor its employees may incur liability under § 1983 for the acts of city employees under a theory of respondeat superior. *Monell v. Dep't of Social Serv's*, 436 U.S. 658, 691 (1978); *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). For a municipality to be held liable under § 1983 for actions taken by a city employee, the employee must be executing a city policy or custom that caused the violation of the plaintiff's rights, or the employee must have final policymaking authority with respect to the action taken. *McDowell*, 392 F.3d at 1289-91 (citing *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)). "[F]or a plaintiff to demonstrate a policy or custom, it is 'generally necessary to show a persistent and wide-spread practice.'" *McDowell*, 392 F.3d at 1290 (quoting *Wayne v. Jarvis*, 197 F.3d 1098, 1105 (11th Cir. 1999)).

The City argues, persuasively, that Ms. Samuels does not present evidence that Mr. Goodman, Mr. Blevins, or Mr. Stinson followed a custom or policy that deprived Ms. Samuels of her rights. (Doc. 25, pp. 13-14, 18). At best, Ms. Samuels can establish that the City has no other female traffic control workers and no female traffic control technicians. Without more, this showing does not raise a question of fact regarding whether the City refuses to promote women in the traffic department as a matter of custom or policy.

Moreover, Ms. Samuels has not established that Mr. Goodman, Mr. Blevins, or Mr. Stinson had final policy-making authority. The record in this action shows that the Personnel Board must approve the traffic department's promotion decisions. (*See* Doc. 28-47; Doc. 28-42). In her opposition brief, Ms. Samuels admits that the Personnel Board and Mr. Dawkins "ratified" the promotion decisions. (Doc. 29, p. 24). Ms. Samuels does not argue that the Board's review was not meaningful. Thus, Ms. Samuels has not established a basis for holding the City liable for the alleged conduct of its employees under § 1983.

Therefore, the Court enters judgment for the City on Ms. Samuels's § 1983 claim. The Court also enters judgment for Mr. Goodman, Mr. Blevins, and Mr. Stinson in their official capacities on Ms. Samuels's § 1983 claim because that, essentially, is a suit against the City. *See Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991).

### 2. Individual Capacity Claim

Ms. Samuels asserts a § 1983 against Mr. Goodman, Mr. Blevins, and Mr. Stinson in their individual capacities based on her allegations that they violated her rights and privileges as protected by the Constitution and Title VII. (Doc. 9, pp. 1, 14-16). Section 1983 provides a cause of action against any person who, "acting under color of state law, committed acts that deprived [a plaintiff] of some right [or] privilege [] protected by the Constitution or laws of the United States." *Easley*

*v. Dep't of Corrections*, 590 Fed. Appx. 860, 868 (11th Cir. 2014) (per curiam) (citing 42 U.S.C. § 1983).  "Title VII and § 1983 claims have the same elements where the claims are based on the same set of facts, and in such cases, the claims are subject to the same legal analysis."  *Quigg v. Thomas Cty. Sch. Dist.*, 814 F.3d 1227, 1235 (11th Cir. 2016) (citing *Rioux v. City of Atlanta*, 520 F.3d 1269, 1275 n.5 (11th Cir. 2008)); *see also Richardson v. Leeds Police Dep't*, 71 F.3d 801, 805 (11th Cir. 1995) ("In a case such as this alleging disparate treatment, in which § 1983 is employed as a remedy for the same conduct attacked under Title VII, the elements of the two causes of action are the same.") (quotation and internal quotation marks omitted).

Ms. Samuels asserts that Mr. Goodman, Mr. Blevins, and Mr. Stinson deprived her of rights protected by the Constitution and Title VII when they failed to promote her to the traffic signal technician position, reprimanded her on June 26, 2014 for alleged policy violations, and monitored her usual truck.  (Doc. 9, pp. 14-15).  Thus, Ms. Samuels's § 1983 claims are based on the same set of facts as her Title VII claims against the City, and the Court applies the same legal analysis that it used to assess Ms. Samuels's Title VII claims.

As discussed above, Ms. Samuels did not introduce sufficient evidence to create a question of material fact regarding her gender discrimination claim based on the June 26, 2014 reprimand or her retaliation claim.  *See* pp. 20-21, 26-34,

*supra*. Therefore, for the reasons discussed above in sections III(B) and (C), the Court enters judgment for Mr. Goodman, Mr. Blevins, and Mr. Stinson in their individual capacities on Ms. Samuels's § 1983 claim to the extent that her claim is based on retaliation in violation of Title VII or the allegedly discriminatory June 26, 2014 reprimand.

Conversely, Ms. Samuels has created a question of fact under her failure to promote theory. *See* pp. 16-25, *supra*. Consequently, there also is a question of fact regarding her § 1983 claim against Mr. Goodman, Mr. Blevins, and Mr. Stinson in their individual capacities to the extent that Ms. Samuels's claim is based on the defendants' failure to promote her.

The individual defendants contend that even if there is a question of fact, they still are entitled to summary judgment because negligence and gross negligence are not grounds for liability under § 1983. (*See* Doc. 25, p. 18). The evidence regarding Mr. Goodman's and Mr. Blevins's failure to properly record Ms. Samuels's answers to the interview questions and the destruction of Mr. Stinson's interview notes goes beyond mere negligence and raises a factual question of the defendants' intent. *See* pp. 8-9, *supra*. Accordingly, Ms. Samuels may pursue her § 1983 claim against Mr. Goodman, Mr. Blevins, and Mr. Stinson

in their individual capacities to the extent that her claim is based on the individual defendants' failure to promote her.[23]

## IV.  CONCLUSION

For the reasons discussed above, the Court **DENIES** the defendants' motion to strike.  (Doc. 32).

The Court **GRANTS IN PART** and **DENIES IN PART** the pending motion for summary judgment (Doc. 22).  The Court enters summary judgment on the following claims:

(1) the Title VII gender discrimination claim against the City, but only to the extent the claim is based on the June 26, 2014 reprimand;

(2) the Title VII retaliation claim against the City;

(3) the outrage claim against Mr. Goodman, Mr. Blevins, and Mr. Stinson;

(4) the negligent hiring, training, and supervision claim against Mr. Goodman, Mr. Blevins, and Mr. Stinson;

(5) § 1983 claims against the City and against Mr. Goodman, Mr. Blevins, and Mr. Stinson in their official capacities;

---

[23] The defendants argue that the Court must dismiss Ms. Samuels § 1983 claim against Mr. Stinson because he "was not a part of the hiring or promoting process."  (Doc. 25, p. 27).  The Court does not agree.  The defendants identified Mr. Stinson as one of the individuals involved in the decision not to hire Ms. Samuels.  (Doc. 28-4, p. 4).  Mr. Stinson actively participated in Ms. Samuels's interview for the traffic control technician position by asking questions and taking notes during the interview.  (Doc. 28-2, p. 11; Doc. 28-11, pp. 12-13; Doc. 28-28, pp. 16-17).  Thus, there is a question of fact regarding Mr. Stinson's involvement in the decision not to promote Ms. Samuels, and therefore Mr. Stinson is not entitled to summary judgment on Ms. Samuels's § 1983 claim against him to the extent that her claim is based on the failure to promote.

(6) § 1983 claims against Mr. Goodman, Mr. Blevins, and Mr. Stinson in their individual capacities, but only to the extent the claims are based on retaliation or the June 26, 2014 reprimand; and

(7) The punitive damages demand against the City.

Those claims are **DISMISSED WITH PREJUDICE**. The Court denies the motion for summary judgment with respect to the following claims:

(1) the Title VII gender discrimination claim against the City, to the extent the claim is based upon the failure to promote Ms. Samuels; and

(2) the § 1983 claims against Mr. Goodman, Mr. Blevins, and Mr. Stinson in their individual capacities to the extent the claim is based upon the failure to promote.

The Court will enter a separate order setting this case for trial.

**DONE** and **ORDERED** this September 29, 2017.

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE